**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

         Plaintiff,

vs.

MICHAEL PEARSON,

         Defendant.

Case No. 25-cr-57-LTS

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO
SUPPRESS**

_____

**TABLE OF CONTENTS**

**Page**

*I.*     *INTRODUCTION*.............................................................................**2**

*II.*    *FINDINGS OF FACT*....................................................................**3**

    *A.*     *The Search Warrant and Affidavit* ....................................................**3**

    *B.*     *Investigator Moore's Testimony* ......................................................**9**

*III.*   *DISCUSSION*.............................................................................**14**

    *A.*     *Parties' Arguments* ......................................................................**14**

    *B.*     *Whether the Warrant Was Sufficiently Particular* ..........................**17**

        *1.*     *Relevant law*......................................................................**17**

        *2.*     *Analysis* ..........................................................................**20**

    *C.*     *Whether* Leon *is Applicable* .........................................................**44**

        *1.*     *Relevant law*......................................................................**44**

**2.** *Analysis* .............................................................................**45**

**IV.** *CONCLUSION*..........................................................................**50**

## I.     INTRODUCTION

On July 9, 2025, the Grand Jury returned an Indictment, charging Defendant with one count of Sexual Exploitation of Children in violation of 18 U.S.C. Sections 2251(a) and 2251(e), one count of Enticement of Minors in violation of 18 U.S.C. Section 2422(b), one count of Attempted Enticement of a Minor in violation of 18 U.S.C. Section 2422(b), one count of Distribution of Child Pornography in violation of 18 U.S.C. Sections 2252A(a)(2)(A) and 2252A(b)(1), one count of Receipt of Child Pornography in violation of 18 U.S.C. Sections 2252A(a)(2)(A) and 2252A(b)(1), one count of Possession of Child Pornography in violation of 18 U.S.C. Sections 2252A(a)(5)(B) and 2252A(b)(2), and one count of Extortion in violation of 18 U.S.C. Section 875(b).  (Doc. 3.)

The matter before me is Defendant's motion to suppress.  (Doc. 19.)  The motion was filed January 5, 2026, and listed a cellphone as the item to be suppressed.  (*Id*.)  The Government timely filed a response on January 20, 2026.  (Doc. 23.)  The Honorable Leonard T. Strand, United States District Court Judge, referred the motion to me for a Report and Recommendation.  I held a hearing on Defendant's motion to suppress on February 10, 2026.  (Doc. 24.)

The motion arises from the search and seizure of Defendant's smartphone after he arranged to meet a 14-year-old girl who, as it turned out, was an online persona created by law enforcement.  The search of the phone disclosed child pornography.  Defendant moves to suppress any evidence obtained from the allegedly unlawful search of his phone.

At the hearing, the Defendant's exhibits were admitted without objection:

A. Search Warrant; and

B. Photograph of messages.

The Government called Investigator Kyzer Moore from the Cedar Rapids Police Department. In January 2025, Inv. Moore was assigned to the overnight investigations unit as part of the Mobile Assist Team. I found him credible. For the following reasons, I respectfully recommend that the District Court **grant** Defendant's Motion to Suppress.

## II.   FINDINGS OF FACT

### A.   The Search Warrant and Affidavit

Because the instant motion challenges a search warrant, the first place to examine the underlying facts is the warrant and supporting affidavit. The "Search Warrant Cover Sheet" listed Defendant as the "person," as well as his home address. (Def. Ex. A at 1.) The Cedar Rapids Police Department was listed as the "agency," the date the warrant was requested was January 31, 2025, and the date of execution was February 11, 2025. (*Id.*) The application sought to search Defendant's black Android cellphone in possession of the CRPD because the affiant, Inv. Moore, believed "that at the place(s) and/or on the persons and/or in the vehicles described as follows I believe there is property as listed below which is: Property relevant and material as evidence in a criminal prosecution or investigation."[1]   (*Id.* at 2.)   Regarding Inv. Moore's qualifications, the "Officer Information" states:

> This affiant has been a certified police officer for 7 years and is currently assigned to the Mobile Assist Team MAT within the Investigative Division at the Cedar Rapids Police Department. Several responsibilities are associated with having this assignment, including, but not limited to, investigating crimes against persons, property crimes, financial crimes, and narcotic investigations. Since my initial day of employment your affiant

---

[1] It passed without notice in the briefing that a cellphone is neither a person nor a vehicle. One might argue, somewhat loosely, that a phone is a "place" where information is stored.

has had ongoing training in various topics as recognized by the Iowa Law Enforcement Academy. My knowledge not only has come from organized training sessions, but also my personal knowledge, experience, observations, and information passed on to me by other law enforcement professionals.

(*Id.* at 5.)

The property Inv. Moore sought to seize included a comprehensive search of the phone. In other words, the "Property to be Seized" described "a complete search and examination of the above-refenced device." (*Id.* at 9.) The "Property to be Seized" was then further described "to include but not [be] limited to":

all Call Logs, Messaging, Contacts, Images, Videos, Audio Files, Internet usage and any other data contained within the phone's internal storage, storage accessible by the device and/or external storage devices such as subscriber identity module (SIM) and/or secure digital (SD) cards if present, relating to the following:

Enticing a Minor and Sexual Exploitation of a Minor;

Pursuant to Iowa Code 808, your Affiant request to conduct a search of the above-listed cellular telephone(s)/digital device(s) without a specific time period, due to the nature of the device to be searched.

The following data stored in the cellular phone(s), SIM card(s), and/or memory card(s), relevant to the criminal activity described in the affidavit, that can be viewed, extracted, copied, and maintained by any member of the Affiant's law enforcement agency or a designee, and/or a computer forensic lab or a designee:

- Data which tends to show possession, dominion, and control over said equipment, including device and system ownership information (telephone number, ESN number, serial number, IMEI, IMSI, CCID);

4

- Passwords, encryption keys, codes, and/or other devices or information that may be necessary to access the device and its contents;

- Date/time, language, and other settings preferences to include wireless local area network setting(s), Bluetooth settings to include device name(s), hotspot SSID (name), and MAC address and connection dates and times to the device;

- System and device usage files, logs, and databases utilized to record device activities such as lock/unlock activities, powering on/off cycles, installation and deletions records that relate to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- Telephone contact lists, phone books and telephone logs that relate to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- Data contained in notes, reminders, documents, calendars and/or other similar applications that relates to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- Communications made, stored, sent, received, or deleted that relate to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- Photos and videos created, stored, sent, received, or deleted, or documents containing such photographs or videos that relate to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- All electronic files, data, videos, and communications, including related metadata and location data, stored, sent, received, or deleted from social media and third-party applications located on the device that relate to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

5

- Communications through the SIRI Virtual assistant system, including all communications entered and/or recorded into the system as well as communicated from the system to the user that relate to the Enticing a Minor and Sexual Exploitation of a Minor;

- Global position system (GPS) data and any other geolocation data that relates to the planning and commission of the Enticing a Minor and Sexual Exploitation of a Minor;

- Records of internet activity that relates to the planning and commission of the Enticing a Minor and Prostitution including internet protocol (IP) addresses and Port IDs, firewall logs, transactions with internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses pertaining to violations of the law or that show who used, owned, possessed, or controlled the device(s).

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities of the crime of Enticing a Minor and Sexual Exploitation of a Minor as described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

During the search, photographs of the seized device may be taken to record the condition thereof and/or the location of items therein.

Depending on technological capabilities, copies or partial copies of the data contained within or attached to the seized device may be made, and forensic examination of the copies/partial copies may be conducted. A complete manual examination of the device may also be conducted if necessary.

6

Depending on technological capabilities, copies of the seized electronic item (including bit-by-bit physical copy if possible) may be made, and forensic examination of the copies may be conducted. A complete manual examination of the device may also be conducted if necessary.

Your Affiant or his designee will take custody of the electronic device, electronic media, and/or the articles needed for analysis after all exhibits are properly logged. The exhibits will be physically examined, documented, the storage devices forensically imaged or copied (if necessary and when applicable), and later examined for evidence of these crimes. In cases in which a forensic exam is not possible, or if some data is not extracted from the device, a complete manual exam of the device may be conducted. The results of the examination will be presented to the case investigator or designee. The RETURN portion of this warrant will reflect the actual seizure of articles. The forensic imagining and examination will exceed ten dates or more based on (1) the high volume of data to be processed and examined; (2) the technical requirements and processes required to conduct complete and accurate examinations; but all results will be submitted as evidence at a later date.

In addition, Inv. Moore's affidavit stated the following:

Affidavit

Cedar Rapids investigators have been conducting an ongoing project to apprehend sexual predators in the area. As a part of this project, an undercover female Facebook profile was established. The information for the profile lists the female as being 14 years old. Subjects reach out to the juvenile profile and begin conversations via the messenger system that is a part of Facebook.

On the date of 01/24/2025, a subject with the username "Mike Pearson" reached out to the juvenile female and started a conversation. Looking at this subject's Facebook profile, the date of birth showed 01/19/1985. Early in the conversation, Pearson asked the juvenile female how old she was, and he was told 14 years old and acknowledged the age but continued talking. Pearson eventually turned the conversation sexual and told the juvenile female he would be willing to take her virginity. He also

7

acknowledged the female's age a second time by asking if she was a freshman in high school.

Later in the same conversation, Pearson told the juvenile female that he would send her a picture of his penis if she would send a picture of her vagina. Pearson finished the conversation on 01/24/2025 by asking if he could come over to the juvenile female's residence and was told no.

On 01/27/2025, Pearson began messaging the profile again and asked if the juvenile female's mother was home. He then followed that message by saying, "You wanna play? I wanna taste your pussy." Pearson asked for the juvenile female's address and was directed to the area of Jones Park 201 Wilson Ave SW Cedar Rapids, Linn County, IA 52404. He informed the female that it would be approximately 22 minutes for him to drive to this location. Investigators located a Michael Pearson 01/19/1985 with an address of [XXX] Marion, IA using NCIC. Vehicle information was also located for Pearson showing Iowa plate [XXX XXX] on a blue Chevy Cobalt. Investigators began surveillance on Pearson's vehicle at this address and were able to see the vehicle running. Pearson told the juvenile that he was going to begin driving her way at approximately 0146 hours on 01/28/2025. Investigators followed the vehicle from [XXXX] Vasey Ave until it arrived at Jones Park where Pearson was eventually stopped by officers. Pearson's cellphone was located in the vehicle and when an audio call was placed to his Facebook profile from the juvenile female's Facebook account, it rang through to Pearson's phone.

Pearson was brought to the Cedar Rapids Police Department for questioning where he ultimately admitted to knowing the female was 14 years of age. He also admitted that he had asked for nude photographs of the female and also asked her if he could come over and engage in sex with her. When asked during the interview if there would [be] child pornography on his cellphone, Pearson responded that he did not know.

During the investigation, Pearson's black AO3s Android cellphone was seized and your affiant knows from training and experience that individuals frequently communicate with each other and/or other individuals before, during, and after criminal events. Your affiant also knows from his training and experience that this type of communication usually occurs via cellular phones. Analysis of the data contained in a cellphone or other mobile

8

device could assist your affiant with determining the general location of the device before, during, or after the target offense.  In fact, based on your Affiant's experience in investigating criminal cases, data contained from cellphones has been vital in establishing the who, what, why, where and when related to criminal activity.  As such, the information contained on the device to be searched will assist your affiant with furthering the above-described criminal investigation.

Due to the above circumstances, your affiant is requesting a search warrant to search Michael Pearson's black AO3s Android cellocated [sic] at the Cedar Rapids Police Department 505 1st St SW, Cedar Rapids, Linn County, IA 52404, in its entirely.

(*Id.* at 9-12.)

### B.   *Investigator Moore's Testimony*

At the time of the incidents described in his affidavit, January of 2025, Crimes Against Persons Inv. Moore was employed in the Criminal Investigations Division as a member of the Mobile Assist Team, an overnight investigations unit that included undercover investigations.  (Moore H'rg Test. at 3.)  He has been in this position for almost four years.  (*Id.* at 23.)  Inv. Moore has been involved in over 40 undercover online enticement investigations.  (*Id.* at 3.)  Inv. Moore has received training from other investigators, as well as from the Internet Crimes Against Children task force.  (*Id.* at 4.)

In the "Property to be Seized" section of the search warrant application, Inv. Moore used form language provided to the CRPD by the CRPD's "digital forensics investigator, as well as our primary Internet Crimes Against Children investigator."  (*Id.* at 4-5.)  It was unclear if this was the same person.  Inv. Moore described the language as a template to which the only information he added was the charge or charges being investigated.  (*Id.* at 5.)  In this case, he supplied the language "Enticing of a minor and sexual exploitation of a minor."  (*Id.*)

9

At the time of the search warrant, Inv. Moore had information about communication only through Facebook with the alleged juvenile or "undercover persona." (*Id.* at 6.) Inv. Moore interviewed Defendant on January 24, 2025, when Defendant admitted he had conversations with "Felicia Young," the undercover personality or persona[2] who claimed to be 14 years old. (*Id.* at 6-7.) Another law enforcement officer constructed the profile, but Inv. Moore then took it over. (*Id.* at 39-40.) While the "Felicia" persona was present on various social media applications, Defendant did not communicate with any other social media aspects of the persona. (*Id.* at 40.) Because "Felicia" is a made-up persona, law enforcement knew all the details of the communications she was involved in. (*Id.* at 41.)

Defendant admitted that the conversation turned sexual in nature, and he asked for nude photos. (*Id.* at 7.) When asked whether there would be child pornography on his phone, Defendant stated that "there shouldn't be" and "I don't think so." (*Id.*) This interview occurred prior to the search warrant application. (*Id.* at 8.)

During the interview, Inv. Moore told Defendant he was going to seize the phone and, if he did not provide the passcode, he would perform a "jailbreak" on it, i.e., have the forensic team enter it without a passcode. (*Id.*) Inv. Moore testified it was his intent to seek a search warrant authorizing access to the entire device. (*Id.*) Inv. Moore further testified that he always requests a full extraction of a phone's data in exploitation cases. (*Id.* at 9.) In fact, consistent with his training at the CRPD, Inv. Moore always asks for a full extraction of a phone's data when he applies for a warrant to search a phone in any case. (*Id.* at 9-10.)

---

[2] The affidavit and Inv. Moore's testimony use "persona" or "profile" somewhat interchangeably. I find it helpful to think of the fictional 14-year-old character Inv. Moore was playing as the "persona" and the "profile" as merely the description of that character that was posted to describe the persona.

Sgt. McAlpin performed the cellphone extraction upon receiving a copy of the search warrant from Inv. Moore. (*Id.* at 10.) According to Inv. Moore, the extraction program (Cellebrite or GrayKey) makes a copy of the phone's contents and puts it into a readable format. In this case, Graykey generated an Axiom Portable report which Inv. Moore received from Sgt. McAlpin. (*Id.* at 10-11.) The Axiom report included everything the extraction was able to obtain from Defendant's phone (up to millions of artifacts) and not just evidence relevant to the enticement of the undercover juvenile persona. (*Id.* at 12.) Inv. Moore reviewed "as much data as I can or what I find is pertinent." (*Id.*) Inv. Moore's review of the phone included any communications, calendar entries, phone contacts, and other items regardless of whether it was sexual or criminal in nature. (*Id.* at 13.) Inv. Moore was familiar with a "full extraction" but not a "logical" or "categorical" extraction. (*Id.* at 13-14.) Sgt. McAlpin performed the extraction, but, per the CRPD protocol, Inv. Moore filled out the return of service. (*Id.* at 15.) Inv. Moore is aware that programs like Cellebrite or GrayKey can obtain more information from some phones than others. (*Id.* at 23-24.)

Inv. Moore testified that it is his understanding that after an extraction is complete the law enforcement officer is supposed to look for the items listed in the search warrant as property to be seized. (*Id.* at 24.) Thus, he believes this is the limitation after he receives the extraction from the phone. (*Id.*)

Inv. Moore testified the search was not limited to data that relates to enticing a minor or exploitation of a minor or to the exploitation of the alleged juvenile. (*Id.* at 16.) Regarding other evidence of possible exploitation or enticement Inv. Moore testified he was aware Defendant:

> never gave a confident answer on if there would be conversations with other juveniles on his phone or if there would be naked photographs of juveniles on his phone, as well as my training and experience; if someone has requested these things from someone in the past -- or from me, then I'm

11

not assuming that they had – this is the – I'm the first person they ever requested it from.

(*Id.* at 17.)  Inv. Moore testified that he did not include anything in his affidavit about the absence of a "confident answer" from Defendant, only that Defendant was "not confident about knowing if he'd have child pornography on his phone." (*Id.*)  In point of fact, as quoted above, the affidavit stated, "When asked during the interview if there would [be] child pornography on his cellphone, Pearson responded that he did not know." (Def. Ex. A.)

The only communication Inv. Moore was aware of between the alleged juvenile and Defendant was through Facebook and no other means.  (Moore Hr'g Test. at 18.)  Defendant's Ex. B contains most of the Facebook chat messages between Defendant and the alleged juvenile.[3]  (*Id.* at 26.)

By the time Inv. Moore applied for the warrant he knew the Defendant's date of birth, that he resided in Marion, Iowa, he knew the date of the conversation, he knew the location of the proposed meeting, and he was confident that Defendant was the suspect who had initiated a sexual conversation with the alleged juvenile persona.  (*Id.* at 19-20.)  Despite knowing when the event occurred, Inv. Moore did not include any temporal limit on the phone search.  (*Id.* at 20.)

Inv. Moore testified that not all files or images found on computers or phones have time stamps.  (*Id.* at 27-28.)  Moreover, time stamps may or may not change when saved to a device or moved to a different location.  (*Id.* at 28.)  He is also aware that GrayKey or Cellebrite may generate an inaccurate date in a report when a date is missing.  (*Id.*)

---

[3] Five messages were inadvertently left off Exhibit B, but those were not particularly relevant. (Moore's Hr'g Test. at 27.)

For example, he Inv. Moore has encountered a date such as 1970 on a Cellebrite report.[4] (*Id.* at 29.)

Inv. Moore also described EXIF data as follows:

EXIF data is – I'm not going to use the word "metadata" because that's a broader term. But it's essentially data that -- if I was to take a photograph, it's data that travels with the photo from place to place. That can include anything from shutter speed, aperture, exposure, to date and time the photo was actually taken, or even a geolocation, where like the photo was taken.

(*Id.*) Not all images Inv. Moore has encountered have had EXIF data. EXIF data travels from device to device and may show when a photo was taken, not when it was put on a device. (*Id.* at 30.)

Inv. Moore testified that he has included "time frames" (which I interpret to mean a limitation on the time covered by the warrant) on search warrant applications for electronic social media accounts like Facebook. (*Id.*) The CRPD does not include time limitations or "date ranges" when requesting data from phones or computers because law enforcement might miss important information. (*Id.*)

Inv. Moore testified that, based on his training and experience, it is common for "persons who engage in sexual communications with minors . . . to engage in sexual communications with more than one minor." (*Id.* at 31.) One of the messages between Defendant and the alleged juvenile stated, "I've chatted with a lot of girls your age," but this information was not referenced in the warrant application. (*Id.* at 32.) When asked about his statement about chatting with other girls of that age, Defendant first gave a "not-confident answer" and "ultimately said no to begin with." (*Id.*) When asked if there would be evidence of such chatting on his phone, Defendant said he was unsure and did not give a confident answer. (*Id.* at 32-33.) Defendant did not admit to "chatting

---

[4] The obvious implication is that the date must be wrong because there were no cellphones in 1970.

13

with a lot of girls your age," even though Inv. Moore had seen that message in the chat with the alleged juvenile. (*Id.* at 33.) Inv. Moore also stated that Defendant did not give a confident denial when asked if there would be child pornography on his phone. (*Id.*) These details, however, were not included in the search warrant application. (*Id.* at 35-36.)

Inv. Moore testified he is familiar with Iowa Code Section 728.12 relating to sexual exploitation of a minor by, among other things, possession and production of child pornography. (*Id.* at 34.)

### III.   DISCUSSION

#### A.   Parties' Arguments

Defendant argues that the warrant to search the entire contents of his phone fails the "particularity" requirement of the Fourth Amendment which provides "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added.) (Doc. 19-1 at 4.) Defendant points out the importance of the particularity requirement in the search of phones because of the nature and extent of personal data they contain; and thus, "an insufficiently particular warrant for an electronic device leads to an extreme intrusion on an individual's privacy." (*Id.* at 5.)

Defendant argues that the warrant did not place any limits on the scope of the search. (*Id.* at 6.) Defendant contrasts the alleged general nature of the warrant with the "limited event under investigation," i.e., the conversation between Defendant and an online juvenile persona over a few days. (*Id.*) Defendant asserts that search warrant application "sought permission to scour the entirety of the device, despite the discrete nature of the conduct under investigation." (*Id.*)

14

Defendant relies on *United States v. Rondeau*, No. 4:23-CR-40004-KES, 2024 WL 4765007 (D.S.D. Nov. 23, 2024)[5] which involved the search of an iCloud account where the warrant at issue "contained no subject-matter or temporal limitations and permitted a search of 'essentially anything contained within the iCloud account.'" (Doc. 19-1 at 7) (quoting Rondeau, 2024 WL 4765007, at *4). The district court determined that the warrant failed the particularity requirement. (*Id.*) Defendant argues that like in *Rondeau*:

> The warrant here contained no limitations at all as to the search of Mr. Pearson's phone, even though police were investigating a discrete event that occurred over three days involving one alleged juvenile. Although the warrant incorporated the application by reference, the application contained no limitations either. In fact, the application expressly stated that the categories of information to be searched were "not limited to" any particular type of data or subject matter, meaning that [Inv.] Moore sought to search all digital media regardless of whether it was relevant to the enticement investigation.

(Doc. 19-1 at 8.)

Next, Defendant contends that the *Leon* good faith exception does not save the evidence from the application of the exclusionary rule because the warrant was so facially deficient in its failure to particularize the place to be searched or items to be seized that a reasonable officer could not rely upon it. (*Id.* at 9-10.)

The Government counters that the warrant was sufficiently particular because the search authorized by the warrant was limited by the language "relating to the following: Enticing a Minor and Sexual Exploitation of a Minor." (Doc. 23 at 2.) The Government distinguishes *Rondeau* by noting that the warrant in question there did not identify the crimes that were suspected of being disclosed by the sought-after evidence. (*Id.* at 3.)

___
[5] In his brief, Defendant also relied on *United States v. Holcomb*, 132 F.4th 1118 (9th Cir. 2025). However, at the hearing, Defendant acknowledged that the case had been withdrawn, and he was no longer relying on it.

Relying on *United States v. Shrum*, 59 F.4th 968 (8th Cir. 2023), the Government contends the Eighth Circuit Court of Appeals has approved searches limited by reference to the crime under investigation. (Doc. 23 at 1-2.) The Government finally contends that the search warrant was conducted in good faith and the exclusionary rule should not apply. (*Id.* at 4-7.)

At the hearing the parties made helpful arguments regarding their respective positions. Among other things, Defendant attempted to distinguish *Shrum* on the basis that Inv. Moore had a much better-defined understanding of the scope of Defendant's alleged activity than law enforcement was aware of in *Shrum*. (Hr'g Tr. at 48.) Defendant continued that, as in *Rondeau,* law enforcement could have made a more limited search but chose not to despite well-defined temporal limits known to them, as well as law enforcement's knowledge of the extent of the communications with the alleged juvenile. (*Id.* at 49.)

The Government objected to Defendant's efforts to expand his argument from one about particularity to one of probable cause. (*Id.* at 51.) The Government also argued that the warrant in the *Shrum* case approved by the Eighth Circuit was broader than in the case at bar because it permitted the seizure of a hard drive despite the fact the warrant did not list electronic devices. (*Id.*) The Government also repeatedly emphasized the bullet points in the instant warrant that were absent in *Shrum*. (*Id.*)

Further, the Government also emphasized the difference between the iCloud search in *Rondeau* and the cell phone search here. The Government argued that searching a physical device using time limits would be "very difficult to conceive" and would leave out "chunks of evidence." (*Id.* at 52.)

Lastly, the Government argued that the *Leon* exception should be applied because Inv. Moore followed the template language and filled in blanks for the crimes under investigation as provided by the CRPD forensic examiner. The Government asserts that

although Inv. Moore did not state in his affidavit that he had evidence that Defendant had been communicating with other minors, this information supports his good faith belief that the warrant was valid. The Government contends that Inv. Moore's suspicions about the vagueness of Defendant's answers to questions about other minors and child pornography supports his good faith belief in the validity of the warrant. (*Id.* at 53-54.)

## B. Whether the Warrant Was Sufficiently Particular

### 1. Relevant law

"The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[ ] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'" *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016) (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994), in turn quoting U.S. Const. amend. IV). "A magistrate judge may issue a search warrant 'upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place.'" *Skarda*, 845 F.3d at 376 (quoting *Steagald v. United States*, 451 U.S. 204, 213, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)). "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) ("Probable cause is a fair probability that . . . evidence of a crime will be found in the location to be searched") (quoting *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996)). "Common sense" drives the inquiry into whether probable cause exists, and the ultimate determination cannot be "readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 231-32. "'[T]his practical and common-sensical standard' is based on 'the totality of the circumstances.'"

17

*United States v. Zamora-Garcia*, 831 F.3d 979, 983 (8th Cir. 2016) (alteration in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013)). "When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, . . . 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). "The issuing court's probable cause determination 'should be paid great deference by reviewing courts.'" *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (quoting *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009)).

As noted above, the Fourth Amendment requires that "no Warrants shall issue . . . [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under the Fourth Amendment searches deemed necessary "should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 447 (1971). Moreover, "[g]eneral warrants of course, are prohibited by the Fourth Amendment." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). The Supreme Court explained that:

> "(T)he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. . . . (The Fourth Amendment addresses the problem) by requiring a 'particular description' of the things to be seized." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

*Id*. (alterations in original). Thus, "[t]he particularity requirement prohibits officers 'from conducting general, exploratory rummaging of a person's belongings.'" *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023) (quoting *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014)); *see also United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002) ("This particularity requirement 'ensures that the search will be

18

carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'") (Quoting *Maryland v. Garrison,* 480 U.S. 79, 84 (1987)). The requirement of particularity "'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *Andresen*, 427 U.S. at 480 (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965), in turn quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)); *see also United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) ("The Fourth Amendment prohibits general search warrants and requires a description, with particularity, of the items to be seized.").

"In assessing whether a warrant is sufficiently particular, [courts] consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (citation omitted). The particularity requirement "is one of 'practical accuracy rather than a hypertechnical one.'" *Id*. (quoting *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022)). However, "the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quoting *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). Further, "the items to be seized and the places to be searched must be described with sufficient particularity as to enable the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005).

In sum, the text of the Fourth Amendment:

expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause

is properly established and the scope of the authorized search is set out with particularity.

*Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing Payton v. New York, 445 U.S. 573, 584 (1980)).  Thus, the particularity requirement has three requirements:

> First, a warrant must identify the specific offense for which the police have established probable cause. . . .  Second, a warrant must describe the place to be searched. . . .  Third, the warrant must specify the "items to be seized by their relation to designated crimes."  *United States v. Williams*, 592 F.3d 511, 519 (4th Cir.2010); *see also United States v. Buck*, 813 F.2d 588, 590–92 (2d Cir.1987) (finding that a warrant authorizing the seizure of "any papers, things or property of any kind relating to [the] previously described crime" failed the particularization requirement because it "only described the crimes—and gave no limitation whatsoever on the kind of evidence sought").  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012).

*United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013).

### 2. *Analysis*

In *United States v. Shrum*, 59 F.4th 968 (8th Cir. 2023), the primary case relied upon by the Government, the defendant was suspected of sexual activity with a minor based on text messages between the defendant and the minor found by friends of the minor.  *Id*. at 970.  The execution of a search warrant for the defendant's phone turned up 260 sexually provocative images of the minor.  *Id*. at 971.  Based on the images on the phone, law enforcement obtained a search warrant for the defendant's home.  *Id*.  The search warrant authorized the seizure of the following items:

> specific items of clothing, bedding, a sex toy, cigarettes, a lime green Sharpie, indicia of occupancy of the premises, photographs of the residence, and "[a]ny and all other evidence related to a sexual abuse/exploitation investigation."  The supporting affidavit explained that officers had found sexually explicit images of [the minor] on [the

defendant's] phone and that they sought items that were seen in the background of those images.

*Id*. While the search warrant for the defendant's home was being executed, the defendant was being interviewed at the police station. *Id*. at 971-72. The defendant admitted that he had child pornography on a hard drive in his bedroom at his home. *Id*. at 972. The interviewing officer called the officers at the defendant's home and told them to seize the hard drive. Later, law enforcement obtained another search warrant to search the hard drive. *Id*. The defendant "moved to suppress all evidence obtained after the warrantless seizure of his cell phone, including the images found on the phone; the evidence seized at his house; and the images found on the hard drive." *Id*. The district court denied the motion to suppress. *Id*.

On appeal, among other things, the defendant challenged "the particularity and scope of the warrant that officers relied on to seize the hard drive from his house." *Id*. at 973. The Eighth Circuit noted that:

> The search warrant for [the defendant's] residence listed specific items to be seized, such as articles of clothing and bedding, and "[a]ny and all other evidence related to a sexual abuse/exploitation investigation." [The defendant] focuses on the last, catch-all category of evidence to be seized. He points out that this category is more broadly written than the other categories, which identify specific pieces of evidence. But the last category is limited by the phrase "related to a sexual abuse/exploitation investigation," and the supporting affidavit described the specific nature of the investigation at issue. The affidavit explained that officers had found sexually explicit images of A.B. on [the defendant's] phone and that the intent of the warrant was to seize evidence related to those images.

*Id*. at 973-74 (second alteration in original). The Eighth Circuit determined that:

> The catch-all category could have been more artfully drafted with greater particularity, but the standard of "practical accuracy" was met here. *See Sigillito*, 759 F.3d at 923 (quoting *Peters*, 92 F.3d at 769–70). In light of the facts and circumstances of the investigation, the warrant was sufficiently

21

particular, placing a specific limitation on the search and enabling officers to identify what property was to be seized. *See Nieman*, 520 F.3d at 839 (holding that a warrant, which allowed seizure of "evidence of the illegal possession . . . or delivery of controlled substances," was sufficiently particular); *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995) (determining that a warrant authorizing seizure of "[a]ddress books, photographs, and other items that tend to show co-defendants or co-conspirators" was sufficiently particular).

*Id.* at 974. Additionally, in relation to *Leon*, the Eighth Circuit noted that:

the warrant authorized the seizure of "certain property" described in a list of eight categories. The first seven identified specific property. The eighth category was a catch-all: "Any and all other evidence related to a sexual abuse/exploitation investigation." The supporting affidavit described that a search of [the defendant's] phone had revealed sexually explicit images of [the minor], and the officers executing the warrant learned that [the defendant] admitted to having child pornography on his hard drive. We have found that there "is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010). Thus, while it was likely mistaken, it was not unreasonable under these circumstances for the officers to believe that the hard drive was evidence within the scope of the warrant. *See United States v. Houck*, 888 F.3d 957, 958 (8th Cir. 2018) (determining that "officers were not objectively unreasonable in their belief that [an] RV fell within the warrant's authorization to search 'any vehicles'"); *Suellentrop*, 953 F.3d at 1051 (concluding that even though a cell phone was not listed in the warrant as property officers were authorized to search, searching the cell phone was "among the objectively reasonable honest mistakes that the Fourth Amendment tolerates").

*Id.* at 974-75 (fourth alteration in original).

In *United States v. Rondeau*, No. 4:23-CR-40004-KES, 2024 WL 4765007 (D.S.D. Nov. 23, 2024), the primary case relied upon by Defendant, the defendant objected to the magistrate judge's "conclusion that the warrant for the iCloud account was sufficiently particular," arguing that "the warrant was overly broad, provided no limitations or guidance to executing officers, and allowed officers to rummage through

22

[his] iCloud account." *Id.* at *1. First, the district court addressed the issue of probable cause. The district court noted that "the record indicates that the state magistrate judge who issued the warrant relied solely on Detective Nelson's affidavit in support of the search warrant" and "[t]hus, the court's probable cause analysis is limited to the information contained in Detective Nelson's affidavit." *Id.* at *2. The district court:

> agree[d] with the Magistrate Judge's finding that Detective Nelson's affidavit in support of the search warrant of [the defendant's] iCloud account provided sufficient facts from which the issuing judge could find probable cause to believe [the defendant's] iCloud account contained evidence relating to the rape of S.R. . . . Based upon S.R.'s statements that [the defendant] took photos and videos of her during the alleged rape and the officers' connection of [the defendant's] iPhone to the iCloud account, . . . the issuing state magistrate judge had a substantial basis for concluding that there was a fair probability that evidence of the alleged rape would be on [the defendant's] iCloud account. Thus, the requisite nexus existed between the crime and the iCloud account to support a finding that the iCloud warrant was supported by probable cause.

> The Magistrate Judge concluded, however, that the affidavit for the iCloud warrant failed to establish a nexus between "[the defendant's] alleged criminal conduct and the broad array of data sought by the warrant," because it lacked sufficient temporal limitations and sought to seize items unrelated to the crime under investigation. . . . As noted in the Report and Recommendation, the affidavit for the iCloud warrant requested the seizure of certain groups of data based on what the data "can" or "may" do. *See id.* at 20 (listing some provisions of the warrant's affidavit describing evidence that "may lead to the discovery of additional evidence" or "may also provide relevant insight into the account owner's state of mind"). The court agrees with the Magistrate Judge that not every item listed as an item to be seized was supported by probable cause because not every item was supported by a reasonable belief "that the evidence sought will aid in a particular apprehension or conviction." *See Saddler*, 19 F.4th at 1039 (quoting *Warden*, 387 U.S. at 307).

> As the Magistrate Judge reasoned, "[n]othing in the facts supplied by Detective Nelson gives any indication that a spreadsheet, an email, a game,

[the defendant's] calendar from 2018, or the majority of the 'millions of digital artifacts' in the iCloud file relate in any way to the investigation of the rape of S.R. in mid-June, 2022. . . ." As such, this court concludes that the search and seizure of [the defendant's] 11-year-old iCloud account was "broader than can be justified by the probable cause upon which the warrant was based." *United States v. Burkhow*, 2020 WL 589536, at \*8 (N.D. Iowa Feb. 6, 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)).

*Id*. at \*2-3 (eighth alteration in original).

Next, the district court addressed the defendant's particularity argument. The defendant argued that "the list of items to be seized fails the particularity requirement because it provided no limitations or guidance to officers regarding what data they could search once the iCloud data was received from Apple . . . [r]ather, it authorized law enforcement to conduct a general rummaging through the entirety of [the defendant's] iCloud." *Id*. at \*3 (first alteration in original) (quotation omitted). The district court determined that:

> For iCloud warrants in general, while it is not clear how "an iCloud warrant should identify the target of a search with particularity," a warrant may do so through subject matter limitations—for example, limiting the "search of communications data to only communications with known or suspected co-conspirators," or through temporal limitations. *United States v. McCall*, 84 F.4th 1317, 1327 (11th Cir. 2023). "Because the same content can be stored in so many different formats, a subject-based limitation may sometimes be so broad as to be meaningless." *Id*. Thus, a temporal limitation will often be the "preferred method of limiting the scope of a search warrant for a cloud account" because it helps officers to "particularize their searches to avoid general rummaging." *Id*. at 1328. Such limitations address privacy concerns created by the wholesale seizure of digital data, which the Supreme Court warned "would typically expose the government to far more than the most exhaustive search of a house." *Riley v. California*, 573 U.S. 373, 396 (2014).
>
> Here, the template Officer Nelson used to draft the iCloud warrant included a list of eleven types of data that virtually authorized the search and seizure

of every piece of data that could be found in [the defendant's] iCloud account. . . .  The files to be searched for and seized are not described as those files that constitute evidence of conduct that would give rise to the crime of rape, or indeed, any crime.  Rather, the files that the iCloud account could be searched for and seized includes "all subscriber information," "all email content," "all detailed billings records," all photographs and videos, "all location history,"—essentially anything contained within the iCloud account. . . .

The Eighth Circuit's particularity test often focuses on whether the offense under investigation was sufficiently identified and tied to the items to be searched and seized in the warrant.  *Sherman*, 372 F. App'x at 676 (holding that a warrant was not overbroad because the search warrant was tied to a specific crime); *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (holding that a warrant that limited items to be searched and seized to those relevant to the charged crime was not overbroad); *Gleich*, 397 F.3d at 611-12 (holding that a warrant authorizing the search of computer files was sufficiently particular because it limited the officers' search to "items specifically prohibited by statute"); *see also United States v. Good Voice*, 602 F. Supp. 3d. 1150, 1168-69 (D.S.D. 2022) (holding warrant that authorized the search of defendant's entire Facebook account was sufficiently particular because it limited the evidence to be seized to violations of a specific statute and contained temporal limitations).  The only limiting provision on the search warrant itself is the reference in the caption to "[i]n the matter of Rape in Lincoln County, South Dakota. . . ." Beyond this line in the caption, there is no reference to a victim, statute, temporal condition, or other language in the warrant that would inform officers of what they were allowed to seize.  Courts have held that warrants lacking such references are overbroad.  *Compare Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023) (upholding the seizure of an individual's entire phone as sufficiently particular where the warrant "described with specificity three federal offenses the government is investigating[,] . . . identified the particular records and information that law enforcement may seize[,]" and where the government "implemented filter protocols to safeguard confidential, private, and privileged matters" on the individual's phone); *with In re Grand Jury Proceedings*, 716 F.2d 493, 497 (8th Cir. 1983) (holding that the scope of a warrant was overbroad, despite including a temporal limitation, where "the warrant did not indicate that the documents sought pertained to any specific transactions, did not identify the

25

offenses on which the evidence was sought, and did not confine the search to any particular files or categories of documents"); *and United States v. Jackson*, 2019 WL 13127190, at *10, 13 (D. Minn. Jan. 4, 2019) (holding that warrant's authorization to seize "[a]ny and all files" stored on a phone was overbroad because the warrant failed to constrain the search and seizure to the specific offense for which the warrant was issued). Further, based upon the searching officers' own understanding that the iCloud warrant authorized a search for "basically anything that was in the iCloud warrant," the reference to a rape in the warrant's caption failed to sufficiently identify and limit the seizure of files to the crime under investigation. . . .

Even if this court were to assume that the caption's reference to a rape is a sufficient limitation, the lack of a temporal limitation, "where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular." *Burkhow*, 2020 WL 589536, at *8-10 (holding that a search of a defendant's entire Facebook account was overbroad because while the warrants only "authorized the government to seize a limited amount of information related to the specific offense[s] under investigation," the court reasoned that "[s]ome reasonable attempt could have been made to narrow the scope of the search, particularly by setting date limitations") (citations omitted). At the evidentiary hearing, it was established that the iCloud account was created in 2011, and Officer Nelson testified that he believed the earliest photograph obtained by officers was dated sometime in late-2020. . . . It is difficult to conclude that S.R.'s allegations, which indicated that the earliest communication between S.R. and [the defendant] took place on June 13, 2022, . . . justifies the iCloud warrant's request to search and seize all evidence, from any device, within an 11-year-old iCloud account. Instead, the lack of a sufficient subject matter restriction or circumscribed time window in the iCloud warrant allowed officers to engage in a "general, exploratory rummaging" that the Fourth Amendment seeks to prevent. *Shrum*, 59 F.4th at 973 (quoting *Sigillito*, 759 F.3d at 923); *see also McCall*, 84 F.4th at 1321, 1328 (assuming that an iCloud warrant, which "authorized officers to search seven broad categories of data, essentially encompassing the entirety of [the defendant's] iCloud account" was overbroad where the government conceded the warrant was insufficiently particular because "it allowed a search of all the conceivable data on the account without any meaningful limitation").

Also, even when courts have upheld broad language in describing the items to be seized as sufficiently particular, it is, in part, because officers do not have information as to where specific evidence of a crime is located on a phone or social media account. *See*, *e.g.*, *Ivey*, 91 F.4th at 917-18 (upholding search of defendant's entire phone for "evidence related to firearms, ammunition, and possession" as sufficiently particular because "[e]vidence of the offense could have been found anywhere in the phone"); *United States v. Bishop*, 910 F.3d 335, 336-38 (7th Cir. 2018) (holding that a warrant's seizure description of "any evidence" related to the crime of dealing illegal drugs was sufficiently particular when officers did not know where the defendant kept such evidence on his phone); *United States v. Alford*, 744 Fed. App'x 650, 653 (11th Cir. 2018) (upholding a warrant to search nearly all data in a Google account because it "was as specific as the circumstances and nature of the activity under investigation permitted" where the investigators did not know the identity of the perpetrator linked to the account). Under such circumstances, these warrants were not "general warrants" because the "warrant[s] need not be more specific than knowledge allows." *Ivey*, 91 F.4th at 918 (quoting *Bishop*, 910 F.3d at 337-38).

Here, however, such broad language in the iCloud warrant was unnecessary. This is a not a case where "no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored, [such that] it was necessary to search a broad array of items for the relevant materials." *Summage*, 481 F.3d at 1079-80. Officer Nelson had information that [the defendant] had allegedly photographed and taken videos of S.R. using his iPhone. . . . Officer Nelson also had information that the communications between S.R. and [the defendant] occurred only on Snapchat and reached back to the date of June 13, 2022. . . . He did not have information that Rondeau made purchases related to the offense with his Apple ID, that any device besides [the defendant's] iPhone was used during the offense, or that S.R. and [the defendant] communicated through any other app. Unlike the circumstances justifying a search of the defendant's entire phone in *Ivey*, here, "[e]vidence of the offense could [not] have been found anywhere in the phone." *Ivey*, 91 F.4th at 918. Under the present circumstances, because Officer Nelson knew the limited time frame of the offense, and "the precise identity and content of the photos/videos sought," *see United States v. Winn*, 79 F. Supp. 3d 904, 920-21 (S.D. Ill. 2015), the iCloud warrant was

27

insufficiently particular in its inclusion of all parts of an iCloud account because it was not as "specific [as] knowledge allow[ed]." *Ivey*, 91 F.4th at 918 (quoting *Bishop*, 910 F.3d at 337-38); *see also United States v. Jones*, 2021 WL 960910, at * 4 (D. Minn. Mar. 15, 2021) (reasoning that "general categories of information to search" were sufficiently particular where the Facebook warrant "identified specific categories of information to be searched and seized, and it permitted seizure of data from a relatively narrow time window").

*Id*. at *4-6 (some alterations in original).

In *United States v. Winn*, 79 F.Supp.3d 904 (S.D. Ill. 2015), the district court addressed the issue of particularity of a search warrant where the warrant "authorized the seizure of 'any and all files' that constituted evidence of disorderly conduct which, according to [the defendant], essentially invited the police to conduct an illegal general search of his cell phone." *Id*. at 918. In *Winn*, the warrant:

> the seizure of "any or all files" contained on the cell phone and its memory card that "constitute[d] evidence of the offense of [Public Indecency 720 ILCS 5/11–30]," including, but not limited to, the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any delated data[.]

*Id*. at 919 (first and second alterations in original). The district court explained that:

> The major, overriding problem with the description of the object of the search—"any or all files"—is that the police did not have probable cause to believe that everything on the phone was evidence of the crime of public indecency. The description was a template used by the St. Clair County State's Attorney's Office for all cell phone searches. Templates are, of course, fine to use as a starting point. But they must be tailored to the facts of each case. This particular template authorized the seizure of virtually every piece of data that could conceivably be found on the phone. The Supreme Court put the scope of such a wholesale seizure in perspective by explaining that it "would typically expose the government to far *more* than the most exhaustive search of a house." *Riley v. California*, ––– U.S. –––

28

–, 134 S.Ct. 2473, 2491, 189 L.Ed.2d 430 (2014) (emphasis in original). Obviously, the police will not have probable cause to search through and seize such an expansive array of data every time they search a cell phone. And, in the case of a misdemeanor crime, it is difficult to fathom why the police would ever need, or have probable cause, to do so. That certainly holds true in the instant case.

Based on the complaint supporting the search warrant, there was probable cause to believe that only two categories of data could possibly be evidence of the crime: photos and videos[.] . . . The complaint did not offer any basis—such as facts learned during the investigation or Detective Lambert's training and expertise—to believe that the calendar, phonebook, contacts, SMS messages, MMS messages, emails, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, or system files were connected with [the defendant's] act of public indecency. In fact, the narrative portion of the complaint did not even mention those categories of data. Furthermore, Detective Lambert admitted at the hearing that he had no reason to believe much of that data contained evidence of the crime of public indecency.

*Id.* at 919-20. The district court noted that:

The Government elicited explanations at the hearing from Detective Lambert and Investigator Robertson as to how some of this data might be evidence of the crime of public indecency. However, "[t]he police cannot rationalize a search post hoc on the basis of information they failed to set forth in their warrant application to a neutral [judge]." *Messerschmidt v. Millender*, --- U.S. ----, 132 S.Ct. 1235, 1257 n. 8, 182 L.Ed.2d 47 (2012); *accord Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir.2009) ("[Courts] do not view probable cause determinations with hindsight.") The validity of the warrant is assessed solely on the basis of the information that the police disclosed in the complaint at the time the search warrant was issued. *See Messerschmidt*, 132 S.Ct. at 1257 n. 8 ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention." (citing *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)); *United States v. Carson*, 582 F.3d 827, 831–32 (7th Cir.2009) ("If an affidavit is the only evidence presented to the judge in support of a search warrant . . . the validity of the warrant depends on the

29

strength of the affidavit.") (citation omitted). "Information that emerges after the warrant is issued has no bearing" on the analysis of the validity of the warrant. *Guzman*, 565 F.3d at 396.

The bottom line is that if Detective Lambert wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to [the defendant's] criminal activity, and he did not do so. Consequently, the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of public indecency.

*Id.* at 920 (first, second, and third alteration in original). The district court also addressed the categories of the data sought in the search warrant:

With respect to the categories of data for which the police did have probable cause—the photos and the videos—the warrant was not as particular as could be reasonably expected given the nature of the crime and the information the police possessed. The warrant merely described the category of data, rather than specific items, which allowed the police to seize all of the photos and videos on [the defendant's] phone, as opposed to specific photos and videos. As the Supreme Court explained, a sixteen-gigabyte smart phone like [the defendant's] can hold thousands of pictures and hundreds of videos dating back "to the purchase of the phone, or even earlier." *Riley*, 134 S.Ct. at 2489, 2490. This is not a case where the police needed to browse through hundreds of photos and videos to find what they were looking for because Detective Lambert knew the precise identity and content of the photos/videos sought. However, he failed to mention the characteristics that made those photos/videos easily identifiable and distinguished them from others that were irrelevant. For example, the warrant could have described the location of the incident as well as the subjects of the images— children at a swimming pool, or more specifically young girls in swimsuits at the Mascoutah Public Pool. *See, e.g., Mann*, 592 F.3d at 780–81 (where warrant authorized police to search for "images of women in locker rooms or other private areas" for evidence of voyeurism).

Most importantly, the warrant should have specified the relevant time frame. The alleged criminal activity took place on one day only—June 18, 2014—and the police were looking for photos or videos taken that same

day. There was nothing in the complaint indicating that any data created prior to that date was connected to the suspected public indecency. "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir.2010) (citing *United States v. Ford*, 184 F.3d 566, 576 (6th Cir.1999) (warrant was overbroad where "the government chose to use descriptions of items to be seized that referenced no specific patients, no specific transactions, and most importantly, no time frame"). *See also United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars & Fifty–Seven Cents ($92,422.57)*, 307 F.3d 137, 156 (3d Cir.2002) (warrant was overbroad where it contained no limitations as to the time period and "bestowed license to forage through any records," including those from an eleven-year period prior to the time frame under investigation).

*Id*. at 920-21. Further, the district court noted that:

The only limit implied by the search warrant is the reference to the criminal statute that [the defendant] supposedly violated. "An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant." *United States v. Leary*, 846 F.2d 592, 602 (10th Cir.1988). *See also United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir.1986) (finding that search warrant violated particularity requirement where only limitation on scope of search was items to be seized had to be evidence of violation of one of thirteen statutes, some of exceptional scope); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir.1980) (finding that search warrant violated particularity requirement where only limitation was reference to the mail fraud statute which is extremely broad in scope). And a reference to a general statute certainly will not satisfy the Fourth Amendment's particularity requirement when the police could have more precisely described the evidence that they were seeking or included other limiting features. *See Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir.2009) ("It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.") (citation and alterations omitted). *But see United States v. Vitek Supply Corp.*, 144 F.3d 476, 481–82 (1998) (finding warrant did not violate particularity requirement because it was limited by reference to three narrowly focused statutes, narrowed by a date limitation,

31

and the government could not have been more precise about the records it was seeking).

*Id*. at 921. The district court concluded that:

> In sum, the complaint establishes that the police had probable cause to look for and seize a very small and specific subset of data on [the defendant's] cell phone. But the warrant did not limit the scope of the seizure to only that data or describe that data with as much particularity as the circumstances allowed. Instead, the warrant contained an unabridged template that authorized the police to seize the entirety of the phone and rummage through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue. Simply put, the warrant told the police to take everything, and they did. As such, the warrant was overbroad in every respect and violated the Fourth Amendment.

*Id*. at 922.

In *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536 (N.D. Iowa Feb. 6, 2020), this Court, per now Chief Judge C.J. Williams, addressed the particularity requirement at length in the somewhat related context of a search warrant directed to a Facebook account:

> Some courts have held that a warrant to search a defendant's social media account is not overbroad if it particularly describes the information to be disclosed and the offense being investigated. *See, e.g., Ulbricht*, 858 F.3d at 104 (finding the warrant to search a defendant's Google and Facebook accounts was not overbroad because it listed the offenses to be investigated, things to be searched, and information to be seized); *United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *6 (D. Kan. Apr. 10, 2018) (finding that a warrant to search the defendant's Facebook [account] was not overbroad despite the lack of temporal limitations because it was limited to gathering evidence of a specified crime which by its nature required a broad search); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *26 (E.D.N.Y. Dec. 21, 2015) (concluding that a warrant to search a Facebook account is sufficiently particular if it is "limited by reference to an exemplary list of items to be seized and the crime being investigated[.]"); *United States v. Sharp*, No. 1:14-CR-00229-TCB-RGV,

2015 U.S. Dist. LEXIS 102406 at *30-31 (N.D. Ga. June 12, 2015) (finding that a warrant issued pursuant to Federal Rule of Criminal Procedure 41(e)(2)(B) to search the defendant's Facebook account for evidence of copyright infringement was proper despite the lack of time or subject matter limitations).  Such decisions emphasize that the mere fact that a warrant calls for a broad seizure of items does not alone dictate that the warrant is overbroad.  *See, e.g., Sharp*, 2015 U.S. Dist. LEXIS 102406, at *31 (citing *United States v. Sugar*, 606 F. Supp. 1134, 1151 (S.D.N.Y. 1985)).

Other courts have held that "[i]t is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Irving*, 347 F. Supp. 3d 615, 624 (D. Kan. 2018) (finding a warrant to search a defendant's Facebook [account] was overbroad when defined only by a specified crime without any other scope or time limitations) (quoting *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009)).  Courts have noted that warrants for social media accounts should be tailored in time or to relevant persons to prevent a general rummaging.  *United States v. Chavez*, No. 3:18-CR-00311-MOC-DCK-3, 2019 WL 5849895, at *9 (W.D.N.C. Nov. 7, 2019) (holding that although probable cause supported the warrant to search the defendant's Facebook account, the failure to limit the warrant temporally or to members of the fraud caused it to be overbroad); *see also United States v. Charles*, No. 16-065 (JNE/FLN), 2016 WL 5939333, at *3 (D. Minn. Oct. 12, 2016) (rejecting the defendant's argument that the warrant to search his Facebook [account] was overbroad in part because the warrant was "for a specified, fairly narrow period of time close in time" to the criminal activity); *United States v. Hamilton*, No. 16-20062, 2017 WL 1376586, at *8, *10 (E.D. Mich. Apr. 11, 2017) (finding that a warrant to search the defendant's Facebook [account] was not overbroad in part because it was limited to the time period of the criminal conduct at issue).  In other words, such searches "should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

33

*Id*. at *9 (second and third alterations in original).  Chief Judge Williams explained further that:

> The extent to which a search can be limited, however, turns greatly on the posture of the investigation at issue.  The court in *United States v. Shipp* acknowledged that the lack of temporal limitations in a warrant to search a Facebook profile is troubling when such limitations were possible:
>
>> Moreover, although the Facebook Warrant only permitted the government to seize "evidence of a violation of 18 U.S.C. § 922(g) involving [the defendant] since January 1, 2018," the government was permitted to search the entire Facebook account since its creation.  "A warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular."  *Zemlyansky*, 945 F. Supp. 2d at 464. . . .  Although a temporal limitation for the data being searched is not "an absolute necessity," *see United States v. Hernandez*, No. 09-CR-625 (HB), 2010 U.S. Dist. LEXIS 719, 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010) (noting that a "temporal limitation" is an "indic[ium] of particularity"), it would appear to have been feasible to include such a limitation here.  Doing so could have mitigated the court's concerns about the breadth of this warrant.  *See Blake*, 868 F.3d at 974 (observing that Facebook warrants "should have requested data only from the period of time during which [the defendant] was suspected of taking part in the [charged crime]").
>
> 392 F. Supp. 3d 300, 310-11 (E.D.N.Y. 2019) (citations omitted).  Thus, the Court finds that "[t]he proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *Hamilton*, 2017 WL 1376586, at *8 (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004)).

*Id*. at *9-10 (alterations in original).  Chief Judge Williams also stated that:

34

This calculus must also accommodate the complexity of the crime under investigation. Indeed, "whether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated." *Allen*, 2018 WL 1726349, at \*6 (quoting *United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011)). Thus, "[w]arrants related to complex criminal schemes may be deemed sufficient even though they are less particular than warrants pertaining to more straightforward criminal matters." *Id.* For example, the complex crime being investigated in *United States v. Allen*, "conspiracy to use a weapon of mass destruction," *id.*, required less particularity than the offense at issue in *United States v. Irving*, failure to register a social media profile as a sex offender, 347 F. Supp. 3d at 624. Ultimately, "[t]he degree of specificity required is flexible and depends on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (internal quotation marks omitted).

*Id*. at \*10 (alterations in original). Applying these principles, Chief Judge Williams determined that:

The Court finds that permitting the search of defendant's entire Facebook account was broader than the probable cause on which the warrant was based. *See Galpin*, 720 F.3d at 445. The mere fact that the government could not determine when the alleged criminal conduct began does not justify a search without any temporal limitations. Some reasonable attempt could have been made to narrow the scope of this search, particularly by setting date limitations if not restrictions to specific account activities or interactions with particular persons. *See Hamilton*, 2019 WL 4455997, at \*4. Such limitations need not have been strictly confined to the time frame the government was investigating given that the nature of the offense suggested established and ongoing criminal conduct. Such limitations, however, should have been reasonably tailored around that relevant time frame. *See Summage*, 481 F.3d at 1079 (noting that courts review the scope of a warrant for practical accuracy, not hypertechnical accuracy). Online activity defendant engaged in years ago—including everything from private messages to rejected friend requests to "pokes"—was not necessary to review under the circumstances here. The Court acknowledges that setting reasonable temporal limitations can be difficult and varies based on the specific facts of each case. Merely opting to review the entirety of a defendant's social media profile, however, does little to avoid capturing

35

private information that is highly unlikely to be relevant. Given that social media profiles often contain a wide array of personal data spanning years, some restriction here was necessary to prevent a general rummaging beyond limiting seizure to the offenses being investigated.

*Id.*

Here, the search warrant sought "a complete search and examination" of the cell phone. (Def. Ex. A at 9.) Specifically, the warrant provided for the search of the phone "to include but not [be] limited to":

> all Call Logs, Messaging, Contacts, Images, Videos, Audio Files, Internet usage and any other data contained within the phone's internal storage, storage accessible by the device and/or external storage devices such as subscriber identity module (SIM) and/or secure digital (SD) cards[.]

(*Id.*) Inv. Moore explained that the warrant application was created from a template used by the CRPD. Inv. Moore stated that the only information he added to the template were the charges being investigated, "Enticing of a minor and sexual exploitation of a minor." (Moore Hr'g Test. at 5; Def. Ex. A at 9.) Inv. Moore testified that it was his intent to obtain a warrant that would authorize his access to the "entirety" of the phone. (Moore Hr'g Test. at 8.) The report generated by the phone extraction included everything the extraction was able to obtain from Defendant's phone (up to millions of artifacts) and not just evidence relevant to the enticement of the undercover juvenile persona. (*Id.* at 12.) Inv. Moore testified that he reviewed "as much data as I can or what I find is pertinent." (*Id.*) Inv. Moore's review of the phone included any communications, calendar entries, phone contacts, and other items regardless of whether it was sexual or criminal in nature. (*Id.* at 13.) Inv. Moore also acknowledged that the search was not limited to data relating to enticement of a minor or exploitation of a minor or to the exploitation of the alleged juvenile. (*Id.* at 16.)

36

According to the affidavit, law enforcement had the following knowledge regarding Defendant's alleged enticement of a minor and exploitation of a minor: (1) CRPD had created a female Facebook profile listing the female persona's age as 14 years; (2) subjects are able to contact the female persona and "begin conversations via the messenger system that is a part of Facebook"; (3) on January 24, 2025, Defendant reached out to the juvenile female Facebook persona and began a conversation with the persona; (4) during the January 24, 2025 conversation Defendant asked the persona her age, was told her age was 14, and continued conversing with the persona; (5) the conversation turned sexual and Defendant told the persona he was willing to take her virginity; (6) Defendant offered to send the persona a picture of his penis and asked her to send him a picture of her vagina; (7) Defendant asked if he could go to the persona's home and was told no; (8) on January 27, 2025, Defendant messaged the persona again and asked if she wanted to engage in sexual activity; (9) Defendant asked for the persona's address and was directed to a park; (10) through investigation, law enforcement knew Defendant's address and vehicle and began surveillance on Defendant; (11) in the early hours of January 28, 2025, Defendant informed the persona that he would be driving her way; (12) law enforcement followed Defendant to the park and Defendant was stopped by officers; (13) Defendant's phone was located in his vehicle and rang when the law enforcement placed an audio call from the persona's Facebook account to Defendant's Facebook account; (14) Defendant was taken to the CRPD and was interviewed; (15) during the interview, Defendant admitted that he knew the female persona was 14 years old, admitted that he had asked for nude photographs of the persona, and admitted that he asked the persona whether he come meet her to engage in sex with her; and (16) "[w]hen asked during the interview if there would be child pornography on his cellphone, [Defendant] responded that he did not know." (Def. Ex. A at 11-12.) No other pertinent information was contained in the affidavit. Additionally, Inv. Moore testified that the

37

only communication he was aware of between the persona and Defendant was through Facebook and no other means.  (Moore Hr'g Test. at 18.)

Here, Inv. Moore knew the time frame of the alleged crime under investigation, January 23, 2025 through January 28, 2025.  Inv. Moore knew and controlled the " fictitious juvenile female Facebook persona.  Inv. Moore testified that that the only communication between the persona and Defendant was through Facebook, thus he knew the phone application Defendant used to communicate with the persona.  Inv. Moore also knew all the communications between Defendant and the persona because Inv. Moore controlled it.  Law enforcement also surveilled Defendant on the late night of January 27, 2025 and the early morning of January 28, 2025 when Defendant went to a park to meet the persona.  Inv. Moore also knew that Defendant's phone rang when contacted from the persona's Facebook account.  During an interview on January 28, 2025, Defendant admitted that he knew the female persona was 14 years old, admitted that he had asked for nude photographs of the persona, and admitted that he asked the persona whether he could meet her to engage in sex with her.  Finally, the search warrant affidavit states that, "[w]hen asked during the interview if there would be child pornography on his cellphone, [Defendant] responded that he did not know."  (Def. Ex. A at 12.)

Based on the foregoing, I find that Inv. Moore's affidavit in support of the search warrant for Defendant's cell phone provided sufficient facts from which the issuing judge could find probable cause to believe Defendant's cell phone contained evidence relating to enticement of a minor and exploitation of a minor of the juvenile Facebook persona created by the CRPD.  However, Inv. Moore sought "a complete search and examination" of the cellphone, including "all Call Logs, Messaging, Contacts, Images, Videos, Audio Files, Internet usage and any other data contained within the phone's internal storage, storage accessible by the device and/or external storage devices such as

38

subscriber identity module (SIM) and/or secure digital (SD) cards if present." (Def. Ex. A at 9.)

Based on the totality of the circumstances and the four corners of the search warrant application, including Inv. Moore's affidavit, law enforcement did not have probable cause to believe that everything on the cell phone was evidence of the crimes of enticement of a minor and exploitation of a minor, particularly as it relates to the juvenile Facebook persona created by the CRPD. More to the point, it did not make any attempt to narrow the focus of the search to the data for which probable cause existed.

Inv. Moore testified that the warrant application used a template used by the CRPD for cell phone searches. As the district court in *Winn* stated, "[t]emplates are, of course, fine to use as a starting point. But they must be tailored to the facts of each case." 79 F.Supp.3d at 919. Like in *Winn*, the template used by the CRPD "authorized the seizure of virtually every piece of data that could conceivably be found on the phone." *Id*. The search warrant application and affidavit, however, did not provide any basis, such as facts learned during the investigation or Inv. Moore's training and expertise, to believe that "all Call Logs, Messaging, Contacts, Images, Videos, Audio Files, Internet usage and any other data contained within the phone's internal storage, storage accessible by the device and/or external storage devices such as subscriber identity module (SIM) and/or secure digital (SD) cards if present" were connected to Defendant's alleged enticement of a minor and exploitation of a minor of the juvenile Facebook persona created by the CRPD. *See id*. at 919-20; *see also Rondeau*, 2024 WL 4765007, at *3 (finding the search warrant application seeking "millions of digital artifacts" over an 11-year period on an iCloud file to be broader than the probable cause on which the search warrant was based, the rape of an individual in mid-June 2022). As the district court in *Winn* stated, if Inv. Moore wanted to seize the entirety of Defendant's cell phone, including every type of data on the phone, "then it was incumbent upon him to explain

39

in the complaint how and why each type of data was connected to [the defendant's] criminal activity, and he did not do so." 79 F.Supp.3d at 920. Thus, I find that the warrant was overbroad, "because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of" enticement of a minor and exploitation of a minor. *Id*.

Moreover, the categories of data that Inv. Moore had probable cause to search—Defendant's Facebook account and Facebook Messenger application—were not as particular as could be reasonably be expected given the information law enforcement possessed. By seeking all the data on the cell phone, as opposed to the communications through Facebook messenger between Defendant and the juvenile Facebook persona created and operated by the CRPD, law enforcement was able to conduct a "general, exploratory rummaging" of Defendant's cell phone, which is prohibited by the Fourth Amendment. *Shrum*, 59 F.4th at 973 (quotation omitted); *see also Pennington*, 287 F.3d at 744 (providing that the "particularity requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit") (quotation omitted); *Winn*, 79 F.Supp.3d at 920. Indeed, this is not a case like *Ivey*, where there was reason to believe "[e]vidence of the offense could have been found anywhere in the phone" and the warrant in that case was not a "general warrant" because "'a warrant need not be more specific than knowledge allows.'" 91 F.4th at 918 (quoting *Bishop*, 910 F.3d at 337-38); *see also Rondeau*, 2024 WL 4765007, at *5. Significantly, the warrant should also have specified the relevant time frame.[6] Because the CRPD controlled the Facebook

---

[6] The warrant application template includes the following language: "Pursuant to Iowa Code 808 your Affiant requests to conduct a search of the above-listed cellular telephone(s)/digital device(s) without a specific time period due to the nature of the device to be searched." (Def. Ex. A at 9.) Further, Inv. Moore testified that not all files or images found on computers or

persona and the communication between the persona and Defendant, Inv. Moore knew all the communications and alleged criminal activity took place between January 24, 2025 and January 28, 2025 involving the persona. There was nothing in the search warrant application or Inv. Moore's affidavit that indicated that any data created prior to the January 24, 2025 through January 28, 2025 dates was connected to the suspected enticement of a minor and exploitation of a minor, the CRPD created juvenile Facebook persona. Under the circumstances present here, Inv. Moore knew the limited time frame of the offense, the actual communications between Defendant and the Facebook persona, and the application used for the communications (Facebook messenger) between Defendant and the persona. Thus, I find that the search warrant was insufficiently particular in its inclusion of the entirety of the data on Defendant's cell phone "because it was not as 'specific [as] knowledge allow[ed].' *Ivey*, 91 F.4th at 918 (quoting *Bishop*, 910 F.3d at 337-38)." *Rondeau*, 2024 WL 4765007, at *6 (alterations in original); *see*

---

phones have time stamps. (Moore Hr'g Test. at 27-28.) Inv. Moore also indicated that time stamps may or may not change when saved to a device or moved to a different location. (*Id.* at 28.) He also stated that he was aware that GrayKey or Cellebrite may generate an inaccurate date in a report when a date is missing. (*Id.*) However, Inv. Moore testified that he has included "time frames" on search warrant applications for electronic social media accounts like Facebook but noted that the CRPD does not include time limitation or "date ranges" when requesting data from phones or computers because law enforcement might miss important information. (*Id.* at 30.) I am unpersuaded, given the information known to Inv. Moore at the time he made the search warrant application, that Inv. Moore could not have included time limitations in the search warrant: (1) Iowa Code Chapter 808 sets forth the mechanism for applying for, issuing, and executing a search warrant under Iowa law and does not specifically address or state that search warrants for cell phones do not need time limitations; and (2) Inv. Moore knew and his affidavit affirms that all communication between Defendant and the juvenile Facebook profile created by the CRPD occurred between January 24, 2025 and January 28, 2025. (*Id.* at 20-21.) Inv. Moore's generalized testimony regarding possible time discrepancies with photos in a cell phone is not helpful here. Moreover, if it were truly impossible (or at least unduly impractical) to draft a more targeted warrant, those circumstances should have been explained to the issuing judge in the warrant application. (*Id.* at 27-30, 52.)

41

*also Burkhow*, 2020 WL 589536, at \*10 ("The Court acknowledges that setting reasonable temporal limitations can be difficult and varies based on the specific facts of each case.  Merely opting to review the entirety of a defendant's social media account, however, does little to avoid capturing private information that is highly unlikely to be relevant.  Given that social media accounts often contain a wide array of personal data spanning years, some restriction here was necessary to prevent a general rummaging beyond limiting seizure to the offenses being investigated.").

In summary, the search warrant application established that law enforcement had probable cause to "look for and seize a very small and specific subset of data" on Defendant's cell phone.  *Winn*, 79 F.Supp.3d at 922.  Further, the search warrant failed to limit "the scope of the seizure to only that data or describe that data with as much particularity as the circumstances allowed."  *Id*.  Instead, the search warrant "contained an unabridged template that authorized the police to seize the entirety of the phone and rummage through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue."  *Id*.

> I acknowledge the Government's argument most succinctly stated at the hearing:

> The Cellebrite or GrayKey gets a lot of data, and then the officer who examines is limited to look at the data that the warrant specifies.  And so just the fact that a lot of data is extracted, that doesn't determine the issue.  Here, the offenses are narrowed, as we outline in our brief, to these two offenses.  That is narrow enough language to make it particular.

(Hr'g Tr. at 50-51.)  I agree that there may be cases where broad language may be justified based on the nature of the offense and law enforcement experience with how that information is stored or secreted.  As noted, "[E]ven when courts have upheld broad language in describing the items to be seized as sufficiently particular, it is, in part, because officers do not have information as to where specific evidence of a crime is located on a phone or social media account."  *Rondeau*, 2024 WL 4765007, at \*5 (citing

42

*Ivey*, 91 F.4th at 917-18 (upholding search of defendant's entire phone for "evidence related to firearms, ammunition, and possession" as sufficiently particular because "[e]vidence of the offense could have been found anywhere in the phone.")).

In my experience reviewing search warrant applications, it is common to see affidavits from investigators explaining why it is necessary, for example, to search every electronic device in a residence in connection with a child pornography investigation because of the propensity of persons interested in such contraband to store it for long periods of time, on multiple devices, and to disguise it from easy detection. Those warrants are approved, in part, because the inability to more narrowly tailor the warrant is reasonably explained. Here, however, the affidavit makes insufficient effort to either tailor the warrant or explain why such tailoring is impossible. For example, the Government argued at the hearing that using dates limitations may result in a failure to capture relevant evidence. That explanation might go some distance in explaining why a broader warrant is justifiable, but it was not supplied in the warrant's supporting affidavit. The following language was employed by Inv. Moore to explain why, in his training and experience, a broader search was necessary based on the facts of the instant case:

> During the investigation, Pearson's black AO3s Android cellphone was seized and your affiant knows from training and experience that individuals frequently communicate with each other and/or other individuals before, during, and after criminal events. Your affiant also knows from his training and experience that this type of communication usually occurs via cellular phones. Analysis of the data contained in a cellphone or other mobile device could assist your affiant with determining the general location of the device before, during, or after the target offense. In fact, based on your Affiant's experience in investigating criminal cases, data contained from cellphones has been vital in establishing the who, what, why, where and when related to criminal activity. As such, the information contained on the device to be searched will assist your affiant with furthering the above-described criminal investigation.

(Def. Ex. A at 10.)  This language merely states that (1) people communicate, usually by phone; (2) data on a device can determine its location; and (3) data on a device is helpful in an investigation.  In essence, this generic suggestion that data on the phone might may be helpful in a criminal investigation is not particularly helpful.

Therefore, I find that the search warrant was overbroad and lacked the particularity known to law enforcement under the circumstances of the investigation constituting a violation of the Fourth Amendment.  Accordingly, I recommend that the motion to suppress be granted.

## C.    *Whether* **Leon** *is Applicable*

### 1.    *Relevant law*

Under the good faith exception articulated in *United States v. Leon*, even if a reviewing court determines substantial evidence to issue a warrant is absent, the court should not suppress evidence seized pursuant to the search warrant if the officers executing the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate or judge.  468 U.S. 897, 922 (1984); *United States v. Houston*, 665 F.3d 991, 994-95 (8th Cir. 2012). "In making this determination, we ask 'whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'"  *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Under the "good-faith exception," if a law enforcement officer's reliance on a warrant was objectively reasonable, the evidence seized pursuant to an invalid warrant will not be suppressed.  *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). *Proell* noted that *Leon* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate:

44

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id*. at 431 (citing *Leon*, 468 U.S. at 923; *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)).

*Leon* explained that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id*. at 922-23. "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, [law enforcement's] prewarrant conduct must have been 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'" *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). If the prewarrant conduct is clearly illegal, however, the exception does not apply. *Cannon*, 127 F.3d at 413.

### 2. *Analysis*

Defendant focuses on the fourth *Proell*/*Leon* scenario—"when the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid"—to argue that *Leon* is inapplicable in this case. The Government relies primarily on *United States v. Eggerson*, 999 F.3d 1121 (8th Cir. 2021). In *Eggerson*, the warrants at issue were for cell phones and the warrants were "supported by probable cause, were

not facially deficient, and were relied on in objective good faith." 999 F.3d at 1127. As such, the Eighth Circuit determined that the *Leon* good faith exception was applicable in that case. *Id*. *Eggerson* is distinguishable, because, as discussed above, the warrant at issue here lacked probable cause and was facially deficient.

This case is far more similar to the following cases. In *Winn*, the district court found the good faith exception inapplicable and explained that:

> the warrant was so facially and grossly overbroad in its description of the items to be seized that "[a] reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization." *Leon*, 468 U.S. at 923, n. 23, 104 S.Ct. 3405. Detective Lambert and Investigator Robertson had at least fifteen years of experience between them, and it was not objectively reasonable for them to think that a warrant was valid when it gave them unbridled discretion to search for and seize whatever they wished. *United States v. Leary*, 846 F.2d 592, 609 (10th Cir.1988) ("A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.") Nevertheless, they took advantage of the full breadth of the warrant and seized the entirety of the phone. Simple common sense dictates that Detective Lambert did not need to look at every bit of data in the cell phone to find the pictures of young girls in swimsuits taken at the Mascoutah Public Pool on June 18, 2014. One cannot find photos taken on a particular date by looking at photos taken three months prior to that date, much less by looking at calendar entries, ringtones, or call logs. *See Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 579 (7th Cir.1999) ("If you are looking for an adult elephant, searching for it in a chest of drawers is not reasonable.")

79 F.Supp.3d at 924; *see also Rondeau*, 2024 WL 4765007, at *10 ("An objectively reasonable officer would conclude that they do not need to look at every piece of data in an 11-year-old iCloud account to find photos and videos of S.R. taken on June 15, 2022. Further, based on the officers' own understanding of the broad scope of the iCloud warrant, the court concludes that the iCloud warrant was 'so facially deficient' such that no executing officer could reasonably rely upon it because it authorized an exploratory,

46

general rummaging of Rondeau's iCloud account."). More recently, in *United States v. Williams*, No. 25-183-GAW-1, --- F.Supp.3d ---, 2025 WL3640894 (E.D. Penn. Dec. 16, 2025), the district court determined that the good faith exception in cell phone search warrant case was inapplicable and explained that:

> [T]he information sought could hardly have been less particularized. This Court, striking the careful balance between the need to protect the Fourth Amendment as well as the right of the people to have their case presented with all the evidence that has been obtained, determines that exclusion is necessary. This Court fears that if it does not exclude evidence, virtually every suspect may someday be subjected to this sort of limitless and unprincipled warrant, based solely on hunches. The need for this protection has only grown in the years since *Riley* and *Carpenter* were decided. Such police misconduct must be deterred now, before it gets out of hand. This Court does not believe that any law enforcement officer could look at that warrant in good faith and find it appropriate.
>
> Further, applying the high-level principles announced by the Supreme Court to the testimony of Detective Jara, there can be no doubt that he was "deliberate" in seeking a warrant that was totally limitless in the scope of data to be obtained. . . . Both his testimony and the argument of the Government made clear that this sort of warrant is a "recurring" problem that also requires remedy. . . . For these reasons, the evidence found in the November 26 Philadelphia Warrant must be excluded.

*Id*. at *17-18. By citing *Williams,* I do not imply Inv. Moore committed any misconduct. My concern lies principally with the template he used without modifying it to fit the facts presented.

Further, in the context of qualified immunity, while not directly applicable here, the United States Supreme Court stated that "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid" and "because the [officer] himself prepared the invalid warrant, he may not argue that the reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to

be seized and was therefore valid." *Groh v. Ramirez*, 540 U.S. 551, 563-64 (2004). *United States v. Contreras-Aguilar* involved a narcotics investigation and a warrant for pre-recorded money used in a controlled drug purchase. No. 2:20-cr-00092-SMJ-1, 2021 WL 149014 (E.D. Wash. Jan. 15, 2021). Following *Groh*, *Contras-Aguilar* determined that the Government's *Leon* argument failed per se because the warrant was "facially deficient (and thus by implication, no objective officer could reasonably presume it to be valid)," as the warrant "plainly did not comply with the particularity requirement—it was both vague and overbroad." *Id.* at \*4; *see also United States v. Irving*, 347 F.Supp.3d 615, 625 (D. Kansas 2018) (finding *Leon* inapplicable because a reasonable officer would have known that an overly broad search warrant for a Facebook account does not permit general rummaging of the account and a "reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized") (quotation omitted); *United States v. Armstrong*, No. 21-cr-228 (DWF/ECW), 2022 WL 17417901, at \*19 (D. Minn. Sept. 2, 2022) (concluding that "*Leon* does not apply to the iPhone Warrants insofar as they were insufficiently particular and overbroad").

Here, like the cases discussed above, the warrant was significantly overbroad. The crime under investigation—enticement of a minor and exploitation of a minor—was based on Defendant's communications with a juvenile Facebook persona created by the CRPD and controlled by Inv. Moore. Thus, there was no reason to even suspect that Defendant was communicating with the persona via other channels. Inv. Moore, who wrote the affidavit attached to the search warrant application and reviewed the data extracted from the phone, knew the dates of the communications (January 24, 2025-January 28, 2025) and the applications used for the communications (Facebook Messenger). Inv. Moore also knew the entirety of the communications between Defendant and the Facebook persona. Without further facts or explanation, Inv. Moore sought the entire contents of Defendant's cell phone. At the hearing the Government

48

argued that Inv. Moore had evidence that Defendant had communicated with other minors and had suspicions about the vagueness of Defendant's answers to questions about other minors and child pornography. This information does not support a good faith belief that the warrant was valid. The Government cites no authority for the proposition that a law enforcement officer's actual knowledge of information not contained in his own affidavit can support the warrant's perceived validity. Nevertheless, Inv. Moore is an experienced law enforcement officer and should know the particularity requirement expressed in the Fourth Amendment; thus, if he believed that such information was important and he believed there was probable cause to search for child pornography and other communications with minors on Defendant's phone, he should have included this information in his affidavit. Here, given the information known to Inv. Moore and given the information Inv. Moore included in the search warrant application and affidavit, as discussed above, I find the warrant so overbroad in the data to be seized that "[a] reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization." *Leon*, 468 U.S. at 923, n. 23.

Here, I perceive that a principal flaw in the affidavit arises from conflating comprehensiveness with particularity. Certainly, the warrant was intended to be comprehensive about what law enforcement was allowed to seize, that is, all the data on the phone. The warrant was specific and lengthy in its description of the data and did not merely recite "everything on the phone," even though that is, in essence, what Inv. Moore intended. Indeed, had the affidavit used such shorthand, the issuing judge might have paused about whether the affidavit established probable cause to search and seize everything on the phone. My point is simply that the comprehensive nature of the list of the "Property to be Seized," does not excuse the absence of probable cause or justify law enforcement's belief it satisfied the particularity requirement of the Fourth Amendment.

49

It was not objectively reasonable for Inv. Moore "to think that a warrant was valid when it gave [him] unbridled discretion to search for and seize whatever [he] wished." *Winn*, 79 F.Supp.3d at 924. Moreover, "[a]n objectively reasonable officer would conclude that they do not need to look at every piece of data" in Defendant's cell phone to find communications between Defendant and a juvenile Facebook persona created and controlled by the CRPD that occurred between January 24, 2025 and January 28, 2025. *Rondeau*, 2024 WL 4765007, at \*10. Therefore, I find that the warrant was "so facially deficient" that no "officer could reasonably rely upon it because it authorized an exploratory, general rummaging of" Defendant's cell phone. *Id.*; *Proell*, 485 F.3d at 431; *see also* Groh, 540 U.S. at 563-64 ("Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid" and "because the [officer] himself prepared the invalid warrant, he may not argue that the reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid"); *Armstrong*, 2022 WL 17417901, at \*19 (concluding that "*Leon* does not apply to the iPhone Warrants insofar as they were insufficiently particular and overbroad"). Accordingly, I find that *Leon* is inapplicable, and I recommend that the motion to suppress be granted.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **grant** Defendant's Motion to Suppress. **(Doc. 19.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure

50

to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 14th day of April, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

51